SPOKANE NEWS CO., Respondent, v. NORTHERN MON-
TANA ASSOCIATION OF CREDIT MEN, Appellant.

(No. 5,452.)

(Submitted April 19, 1924.   Decided June 18, 1924.)

[227 Pac. 39.]

*Assignments for Benefit of Creditors—Continuing Business on
Cash Basis by Court Order—Buying Goods on Credit—Per-
sonal Liability of Assignee.*

1.   Where a credit men's association as assignee of a business for the
benefit of creditors was authorized by order of court to continue the
business as a going concern for a limited time on a cash basis, but
permitted the person placed in charge by it to buy goods on credit,
it was properly *held* personally liable for the goods so purchased.

*Appeal from District Court, Cascade County; H. H. Ewing,
Judge.*

Action by the Spokane News Company against the Northern
Montana Association of Credit Men, a corporation.   Judgment
for plaintiff and defendant appeals.   Affirmed.

*Messrs. Freeman, Thelen & Frary*, for Appellant, submitted
a brief; *Mr. G. S. Frary* argued the cause orally.

*Mr. H. R. Eickemeyer*, for Respondent, submitted a brief
and argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

On November 8, 1919, Matilda Dunning was conducting a
[1]   business in the city of Great Falls known as the South
Side News Stand.   It appeared that while she was sick and
unable to give her personal attention to the business she en-
trusted its management to her nephew, who converted some of
the moneys to his own use.   Because of this and the fact that
the business fell off and her indebtedness increased, the credi-
tors met, and between them it was agreed that Mrs. Dunning

[71 Mont. 26.]

should make an assignment for the benefit of all her creditors. On the date named, pursuant thereto, she executed and delivered to defendant a deed of assignment in which it was provided that, as assignee, defendant should take possession of all the property of the concern and sell and dispose of it with all reasonable diligence, either at public or private sale and for the best prices that could be obtained therefor. It further provided that the assets should be "converted into money," all debts due Mrs. Dunning collected, the reasonable expenses and costs of executing the trust should be paid, and all debts owing by her as assignor satisfied and discharged. If the proceeds of the sale of the property were not sufficient to pay the debts and liabilities and interest, then the money derived from a sale thereof was to be "distributed among the creditors" proportionately. The defendant accepted the trust and agreed to carry out the obligations imposed thereby. Mrs. Dunning, at defendant's request, remained in possession of the business and conducted it on behalf of the defendant as assignee, until the business was finally closed out.

The complaint alleges that between November 10, 1919, and August 6, 1920, plaintiff sold to defendant goods, wares and merchandise of the value of $528.45, which it agreed to pay. The defense pleaded in the answer was that the defendant was acting as assignee for the benefit of the creditors of Mrs. Dunning; that at the request of the plaintiff and the American Bank & Trust Company of Great Falls, two of the largest creditors of the assignor, it accepted the trust and proceeded with its execution; that it secured an order of court authorizing it, as such assignee, to continue the business as a going concern on a cash basis, both as to purchasing and selling merchandise; that the order so obtained required the defendant as assignee to make "return of its proceedings within three months." The answer further alleged that defendant was not personally liable for the debt sued on by plaintiff, and that Mrs. Dunning never informed it of plaintiff's claim, nor did defendant learn of its existence until August 6, 1920, and that the goods, if sold at all, were sold to Mrs. Dunning personally

[71 Mont. 26.]

and not to the defendant as assignee. The reply was a general denial of all the allegations of the answer.

The court found in favor of the plaintiff and entered judgment against the defendant for the amount demanded.

Defendant's appeal is based upon two alleged errors of the trial court in considering the evidence, which its counsel claim shows that (1) the merchandise was sold to Mrs. Dunning personally and not to defendant; and (2) that the business was being conducted under the management of Mrs. Dunning for the defendant as assignee, and that defendant in purchasing the goods sued on was acting solely as the agent of the plaintiff and the American Bank & Trust Company.

Upon the evidence in the record it appears that two days after the deed of assignment was made by Mrs. Dunning and filed for public record, the defendant caused to be delivered to each and all of the creditors of the assignor a written announcement reading:

"At a meeting with the heavily interested creditors this matter was discussed, and Mrs. Dunning felt that if she were given an extension of time, she would be able to pull the business out. With this in mind an assignment for the benefit of creditors was executed, and the business will be operated under our supervision, with Mrs. Dunning in charge, until such time as it is found that the business cannot be made to pay, when it is the opinion of the larger creditors, it should be sold in order to pay off all creditors. While the business is being operated under our supervision, we will ask that any orders for magazines and papers that may be on file with you, be billed to Mrs. Dunning, care of the Northern Montana Association of Credit Men, as it is our purpose to pay the current purchases out of the first receipts of the business, provided it is found not to be on a paying basis. These statements we would request you to send us weekly, so that they may be taken care of promptly.

"As you are listed in her statement as a creditor, we will kindly ask that you send us an assignment on the blank at-

tached hereto, together with a correct statement of your account, which will be filed against the estate and used as a basis for the *pro rata* of any moneys accumulating under the assignment.

"Trusting that you will give your immediate attention by filing your claim promptly, and arrange for the sending of your publications on order as heretofore, we are.

"Very truly yours,

"Northern Montana Ass'n of Credit Men."

Accompanying the letter was a blank form of assignment, as suggested in the body of the letter, transferring the account to the defendant association for collection.

A letter which was mailed by the defendant and received by the plaintiff, dated September 20, 1921, reads as follows:

"Answering your letter of September 17th, we regret to state that we cannot give you a definite answer on account against the South Side News Stand. Our directors state that as a moral obligation we will be obliged to pay the accounts which accrued during the operation of the store by the association and we are endeavoring to straighten the matter out to determine just what is owing for that period. Please send us your statement for goods shipped as indicated and we will try to take care of it in the near future.

"Yours very truly,

"Northern Montana Ass'n of Credit Men.

"E. R. Leonard, Manager."

In addition to the foregoing, the following interrogatories were addressed to W. L. Ignatius, who was the business manager of the defendant corporation during the time covered by the transaction in question: "Q. After looking at that letter of August 23, did you not advise the Spokane News Company, the plaintiff here, that you wanted an itemized statement of their account from November 10, 1919, showing the payments made thereon, as well as returns, *etc.*, so that we, meaning the association, may have our auditor check up, following which we will see that you receive your prompt remittance? Q. Did

you write such a letter to them? A. I imagine I did. * * *
Q. When the business was finally closed out, what became of
the fixtures? A. They were sold to Mr. Prescott on contract
sale. Q. Where are they now? A. I understand they are in
storage.

"The Court: Have they been sold yet? A. No.

"The Court: Do they still belong to the credit association?
A. Yes, sir. There is some stock there too, cigars and stuff."

Besides the foregoing, James A. Nelson, the authorized agent
of the plaintiff Spokane News Company, testified as follows:

"Q. What instructions did Mr. Ignatius, acting for defend-
ant in this action, give you with reference to sending these
periodicals and merchandise you are suing on? A. We were to
continue shipments to the South Side News Stand as in the
past, sending the same order we had been sending to Mrs.
Dunning, that he would personally check her and see that all
receipts and disbursements were taken care of and that they
would be responsible—the association. Q. That is, the associa-
tion would pay it? A. Yes, sir."

The contention of appellant that, because plaintiff knew the
assignee was authorized by the order of the court to continue
the business as a going concern for three months, defendant
was not liable for goods sold to it as assignee, cannot be sus-
tained. The order authorizes the assignee to conduct the
business "as a going concern on a cash basis." That the de-
fendant did not respect the limitations of its authority is ap-
parent from the fact that Mrs. Dunning, while acting for
defendant as assignee, and with its knowledge, ordered and re-
ceived the goods sued for on credit and not on a cash basis as
provided in the court's order. Of this there is abundant evi-
dence in the record, as well as of the fact that the defendant
knew Mrs. Dunning was not paying for the goods as she re-
ceived them.

Even if it could be assumed that the assignee was empowered
by the court's order to purchase goods for the purpose of con-
tinuing the business as a going concern, it did not authorize
the assignee to carry on the business on a credit basis.

Judge Ewing, who was familiar with the transactions, decided the case upon conflicting evidence, and under the well-established rule his findings will not be disturbed by this court. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES GALEN and STARK and HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.